# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOUNANG PATEL, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC, d/b/a XFINITY,<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>District Judge Elaine E. Bucklo<br><br>Magistrate Judge Maria Valdez<br><br>No. 1:17-cv-02570 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PARTIALLY STRIKE PLAINTIFF'S CLASS ALLEGATIONS

Justin O. Kay
**Drinker Biddle & Reath LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL  60606-1698
　Tel.:　(312) 569-1000
　Fax:　(312) 569-3000

OF COUNSEL:

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
Meredith C. Slawe
**Drinker Biddle & Reath LLP**
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
　Tel.:　(215) 988-2700
　Fax:　(215) 988-2757

*Attorneys for Defendants Comcast Corporation
and Comcast Cable Communications, LLC*

July 17, 2017

Defendants Comcast Corporation and Comcast Cable Communications, LLC (together, "Defendants") hereby submit this Memorandum of Law in Support of their Motion to Partially Strike Plaintiff's Class Allegations (the "Motion").[1]

## I. INTRODUCTION

Plaintiff purports to represent himself and a putative class of those "similarly situated." But "similarly situated" individuals are those who could pursue their own claims in this Court. Here, Plaintiff's proposed class includes three distinct groups of subscribers who could not pursue their claims here: (1) subscribers who agreed to arbitrate disputes on an individual basis; (2) subscribers whose claims are barred by a contractual limitations period; and (3) subscribers who have claims over which the Court has no jurisdiction. The Court should either partially strike the class allegations or require Plaintiff to redefine the class to exclude such subscribers. Doing so now is critical because, as numerous courts have acknowledged, a plaintiff could otherwise seek sweeping discovery regarding individuals who could never be part of a class.[2]

First, the Comcast Agreement for Residential Services (the "Subscriber Agreement") includes an arbitration agreement with a class action waiver. As a matter of law, subscribers who choose not to opt out of that arbitration agreement cannot be members of any putative class, as they have agreed to arbitrate disputes instead. As one court explained, allowing a named plaintiff to represent such people "would render the[ir] arbitration clauses totally useless, in contravention of the FAA." *King v. Capital One Bank (USA), N.A.*, No. 11-0068, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012).

---

[1] Although Defendants have filed this Motion now, they have also moved to reassign this action pursuant to Local Rule 40.4 because Plaintiff's claims are intertwined with another putative class action that is also pending in this Court. *See Santangelo v. Comcast Corp.*, No. 15-0293 (N.D. Ill.) (Lee, J.). A similar motion to strike has been filed in the *Santangelo* matter and will be fully briefed on July 19th.

[2] This Motion raises three discrete arguments that may be resolved now; Defendants reserve the right to present additional arguments in opposition to certification should the action proceed to that stage.

Second, the Subscriber Agreement also contains a one-year contractual limitations period. Plaintiff's proposed class definition nevertheless purports to reach back well beyond one year before the filing of the Complaint. Because subscribers agreed to assert claims within one year, the temporal scope of the putative class is similarly improper.

Finally, the putative class includes individuals whose claims are beyond this Court's jurisdiction because they do not reside in Illinois. The Supreme Court recently confirmed that courts do not have specific personal jurisdiction over the claims of a non-forum plaintiff against a non-forum defendant—even if there are plaintiffs in the forum state with the exact same claim. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781-82 (2017). Including such people in a putative class would conflict with that authority and with due process.

Accordingly, Defendants respectfully request that this Court partially strike the class allegations or direct Plaintiff to amend them and exclude such people from the putative class.

## II. BACKGROUND

Comcast Corporation is incorporated in the Commonwealth of Pennsylvania, and Comcast Cable Communications, LLC is formed under Delaware law. Ex. A, Declaration of Claudia Salcedo ("Salcedo Decl.") ¶¶ 4, 6. Both have their principal places of business in Philadelphia, Pennsylvania. *Id.* ¶¶ 4, 6.

The Subscriber Agreement that governs the relationship between Comcast and its subscribers contains a "Binding Arbitration" provision that requires arbitration of disputes. Ex. B, Comcast Agreement for Residential Services dated January 2017 ("Subscriber Agreement") § 13(a); *see also* Salcedo Decl. ¶ 13. Through December 31, 2015, every single version of the arbitration provision has stated:

> If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect

> to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury. . . . The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort . . . or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision. "Dispute" is to be given the broadest possible meaning that will be enforced.

*See* Ex. C, Comcast Agreement for Residential Services dated January 2015 §§ 13(a)-(b); Ex. D, Comcast Agreement for Residential Services dated April 2015 §§ 13(a)-(b); Ex. E, Comcast Agreement for Residential Services dated July 2015 §§ 13(a)-(b); Ex. F, Comcast Agreement for Residential Services dated October 2015 §§ 13(a)-(b); *see also* Salcedo Decl. ¶¶ 17-20. Thereafter, every version of this provision has stated:

> Any Dispute involving you and Comcast shall be resolved through individual arbitration. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court. . . . This Arbitration Provision shall be broadly interpreted. "Dispute" means any claim or controversy related to Comcast, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any prior Agreement; (3) claims that arise after the expiration or termination of this Agreement, and (4) claims that are currently the subject of purported class action litigation in which you are not a member of a certified class.

*See* Subscriber Agreement §§ 13(a)-(b); Ex. G, Comcast Agreement for Residential Services dated January 2016 §§ 13(a)-(b); Ex. H, Comcast Agreement for Residential Services dated April 2016 §§ 13(a)-(b); Ex. I, Comcast Agreement for Residential Services dated July 2016 §§ 13(a)-(b); Ex. J, Comcast Agreement for Residential Services dated October 2016 §§ 13(a)-(b); *see also* Salcedo Decl. ¶¶ 11, 21-24.

Defendants arbitrate disputes with subscribers who do not opt out of that provision. *See* Salcedo Decl. ¶ 15. By agreeing to the arbitration provision, subscribers waive any right to proceed on a consolidated basis with others, whether in arbitration *or* litigation. Subscriber

Agreement § 13(f)(2); Salcedo Decl. ¶ 14 ("THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ***ARBITRATED OR LITIGATED*** ON A CLASS ACTION OR CONSOLIDATED BASIS." (typography in original) (emphasis added)).

The arbitration provision also allows subscribers to opt out of arbitration within 30 days. *See* Subscriber Agreement § 13(c). Plaintiff entered into the Subscriber Agreement in March 2017 and opted out of the arbitration provision on March 23, 2017. As a result, he may bring his individual claims in this Court. Salcedo Decl. ¶ 16.

In addition to the arbitration provision discussed above, the Subscriber Agreement also contains a contractual one-year limitations provision. *See* Subscriber Agreement § 13(f)(1) ("YOU MUST CONTACT US WITHIN ***ONE (1) YEAR*** OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE . . . , OR YOU WAIVE THE RIGHT TO PURSUE ANY CLAIM BASED UPON SUCH EVENT, FACTS, OR DISPUTE." (typography in original) (emphasis added)).

### III.  LEGAL STANDARD

Rule 23 directs courts to address class certification "[a]t an early practicable time," and permits them to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D). Read together, subsections (c)(1)(A) and (d)(1)(D) allow courts to modify or strike class allegations without waiting for a certification motion or discovery.

A motion to strike a class definition is "an appropriate device to determine whether the case will proceed as a class action." *Wright v. Family Dollar, Inc.*, No. 10-4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (Gettleman, J.) (citing *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006) (Moran, J.)). "[A] court may deny class certification even before the plaintiff files a motion requesting certification" and "need not delay a ruling on

certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).[3] Such is the case here—Plaintiff cannot represent the class he purports to represent.

## IV. ARGUMENT

### A. The Class Definition Should Account For The Arbitration Agreement

As noted above, the Subscriber Agreement requires subscribers to arbitrate their claims on an individual basis unless they timely opt out of arbitration. The Supreme Court has consistently held that such provisions are enforceable. As a result, Plaintiff's class definition is overbroad to the extent it seeks to include those who chose not to opt out of arbitration.

#### 1. Arbitration Agreements Are Favored and Presumed to be Enforceable

It is now hornbook law that arbitration agreements are favored and presumed to be enforceable. Indeed, the Supreme Court has repeatedly found that arbitration agreements such as the one at issue here are fully enforceable. *See, e.g.*, *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) ("The Federal Arbitration Act . . . requires courts to place arbitration agreements on 'equal footing with all other contracts.'" (citation omitted)); *Am.*

---

[3] *See also Cholly v. Uptain Grp., Inc.*, No. 15-5030, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017) (Gettlemen, J.) (striking class allegations pursuant to Rule 23 motion to strike); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295, 300 (N.D. Ill. 2014) (St. Eve, J.) (finding that proposed definition was overly broad and directing plaintiff to amend the complaint); *Alqaq v. CitiMortage, Inc.*, No. 13-5130, 2014 WL 1689685, at *5-6 (N.D. Ill. Apr. 29, 2014) (Hart, J.) (striking class allegations before class certification discovery); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (Feinerman, J.) ("The rule's text plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class a*s soon as it becomes obvious* that the plaintiff will be unable to satisfy Rule 23." (emphasis added)).

Circuit courts around the country have similarly found it appropriate to strike class allegations before discovery or class certification briefing. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011) (finding motion to strike class allegations at pleading stage proper); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (explaining that it is permissible for a district court to dismiss class allegations on the pleadings, before discovery); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations.").

*Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010); *see also* Hunt v. Moore Bros., Inc., No. 16-2055, 2017 WL 2803180, at *3 (7th Cir. June 29, 2017) (enforcing arbitration agreement because *inter alia* "arbitration clauses should be generously construed"); *Gore v. Alltell Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (the FAA "embodies both a 'liberal federal policy favoring arbitration'" (quoting *Concepcion*)).[4] As a result, courts have noted the public policy favoring arbitration in deciding to strike or modify class allegations. *See Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 11 (D.D.C. 2015); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) (discussing liberal federal policy favoring arbitration).

### 2. Plaintiff's Proposed Class Cannot Include Those Who Agreed to Arbitration

Any members of the putative class who chose not to opt out of arbitration cannot bring their own suits in this Court, and the fact that they are unnamed members of a purported class does not change that fact, as Rule 23—or any other Rule, for that matter—cannot be used to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Rather, such individuals must pursue any claims in individual arbitrations.

To justify a departure from the "'usual rule that litigation is conducted by and on behalf of the individual named parties only,'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted), a plaintiff must show, among other things, that the "claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative

---

[4] This Court and courts across the country have consistently enforced Comcast's arbitration agreement. *See* Bayer v. Comcast Cable Commc'ns, LLC, No. 12-8618, 2013 WL 1849519 (N.D. Ill. May 1, 2013) (Gettleman, J.); O'Quinn v. Comcast Corp., No. 10-2491, 2010 WL 4932665 (N.D. Ill. Nov. 29, 2010) (Lefkow, J.); Jordan v. Comcast Cable Commc'ns Mgmt., LLC, No. 14-3622, 2016 WL 452145 (N.D. Ga. Feb. 4, 2016); Grear v. Comcast Corp., No. 14-5333, 2015 WL 926576 (N.D. Cal. Mar. 3, 2015); Ellis v. Comcast, No. 13-0038, 2014 WL 651938 (N.D. Miss. Feb. 19, 2014).

parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(3)-(4).[5] A plaintiff's claim is "typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted) (affirming denial of class certification because plaintiff's claims were atypical). To be "typical" for purposes of Rule 23(a)(3), a class representative's claims must "have the same essential characteristics as the claims of the class at large[,]" *Oshana*, 472 F.3d at 514 (citations omitted), and the representative party must "'possess the same interest and suffer the same injury' as the class members." *Dukes*, 564 U.S. at 348 (citations omitted). To be "adequate" for purposes of Rule 23(a)(4), a class representative "must not have interests antagonistic to those of the class." *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977) (citations omitted). Plaintiff cannot satisfy the adequacy and typicality requirements of Rule 23(a) with respect to representing a purported class that includes those who agreed to arbitrate their disputes, and the very recent decision in *Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949 (N.D. Cal. 2017) makes that clear.

In *Conde*, several plaintiffs sued a former employer alleging violations of various federal and California labor laws. *Id.* at 952-53. The plaintiffs sought to represent a class of all workers during a specified time period, but the defendants moved to deny certification before discovery,

---

[5] A plaintiff must, of course, also satisfy the numerosity and commonality elements of Rule 23(a), as well as one of the elements of Rule 23(b). *Smith v. Family Video Movie Club, Inc.*, No. 11-1773, 2013 WL 1628176 (N.D. Ill. Apr. 15, 2013) (Lee, J.). In this case, Plaintiff has alleged that the case satisfies both Rule 23(b)(2)'s requirement that a single final injunction or declaratory judgment is appropriate for each member of the class and Rule 23 (b)(3)'s conditions that individual issues do not predominate and that a class action is superior to individual actions. While Plaintiff cannot satisfy these elements either, the Court need not reach these issues now. *See Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949, 963 (N.D. Cal. 2017) ("Because the Court has granted the motion on typicality grounds, the Court does not rule on [defendant's] arguments that Plaintiffs also cannot satisfy adequacy, commonality, predominance, and superiority.").

7

asserting that plaintiffs could not represent employees who were bound to arbitrate. *Id.* at 957-58. The district court agreed, noting that the plaintiffs "ha[d] no interest in the enforceability of the arbitration agreement itself, and lack[ed] the ability to challenge the agreements on behalf of individuals who did sign such agreements;" that the "[p]laintiffs [therefore could] not satisfy Rule 23's typicality prerequisite as to a class that includes individuals who [were bound to arbitrate];" and that a contrary result "would essentially permit courts to ignore arbitration agreements signed by every absent class member, so long as there is one named plaintiff who is not bound by the arbitration agreement." *Id.* at 960-61, 963. As a result, the Court, at a preliminary stage, denied certification "[t]o the extent [p]laintiffs seek class certification of a class that includes individuals who signed [the] arbitration agreement." *Id.* at 973.[6]

Similarly, in *Tan*, the plaintiff claimed that the defendant had misclassified its delivery drivers as independent contractors, and filed suit purporting to represent a class of all delivery drivers. *Tan v. Grubhub, Inc.*, No. 15-5128, 2016 WL 4721439, at *1 (N.D. Cal. July 19, 2016). As here, however, all of the purported class members were subject to a standard agreement that included an arbitration provision and class action waiver, and as here, the overwhelming majority of the class had not opted out. *Id.* at *3. In refusing to certify such a class, the court in *Tan* focused primarily on the plaintiff's inability to satisfy the adequacy and typicality requirements of Rule 23, noting that the plaintiff "would be unable to credibly make several" arguments on behalf of the class. *Id.*[7]

---

[6] If the Court believes that the proper course is to deny class certification to the extent Plaintiff seeks to represent those who are bound by arbitration agreements, those who are outside the one-year limitations period, or those who have claims that are unconnected to Defendants' actions in Illinois, Defendants respectfully seek such relief in the alternative.

[7] At the February 24, 2017 hearing in *Santangelo*, Judge Lee echoed these same concerns, noting that the salient issues are typicality, adequacy, and superiority, because he was concerned that a plaintiff (such as the Plaintiff here) who opts out of arbitration "is not adequate to represent all of the varied interests of those putative class members that didn't opt out," and because "the manageability issue"

*Conde* and *Tan* are part of a long line of cases that have come to the same conclusion: a plaintiff not bound to arbitrate cannot represent a class that includes individuals who are, and the appropriate course of action is to exclude such individuals. *See Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015) (named plaintiff who was not subject to class action waiver but sought to represent a class including those subject to such a waiver failed adequacy and typicality requirements).[8]

In *Zieger*, for example, the court explained that striking the class allegations with respect to those subject to arbitration agreements was appropriate, because the facts were clear and would not change with further discovery:

> The class, as currently defined . . . cannot survive . . . . [Plaintiff] lacks standing to challenge the Dispute Resolution clause. Moreover, arbitration clauses are presumed to be enforceable. The combination of these two truths bars those who failed to opt out of the Dispute Resolution clause from participating in [plaintiff's]

---

would be "complicated by the fact that both the customer and Comcast have an option [to arbitrate]." Ex. K, *Santangelo* Hr'g Tr. 16:14-16, 23:7-8, 28:7-9, Feb. 24, 2017. As Judge Lee explained in *Santangelo* (which is also the case here), "both the customer and Comcast have an option, right? . . . The customer also has an option to say, look, I have this dispute, right? I don't want to have to sue you. I want to go to arbitration. . . . [D]oesn't that heighten the possibility or the risk that [a plaintiff who opted out] would not be adequately able to represent, for example, those customers[?]" *Id.* at 23:9-11, 23:23-24:1.

Judge Lee raised these questions in the context of a plaintiff challenging the arbitration provision (which for reasons stated above, he cannot do), noting ultimately that "the broader point is, if Mr. Santangelo doesn't have, as you say, standing, for lack of a better word, to challenge the motion to compel arbitration after certification, then what incentive or interest does he have to challenge it now?" *Id.* at 26:23-27:2. The same reasoning applies here.

[8] *See also Lozano*, 504 F.3d at 728 (holding that existence of arbitration agreement with many class members may justify denying certification because individual issues may predominate); *Quinlan v. Macy's Corporate Servs. Inc.*, No. 12-0737, 2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) (denying class certification based in part on lack of typicality where most of class, in contrast to named plaintiff, was subject to arbitration agreement); *Renton v. Kaiser Found. Health Plan, Inc.*, No. 00-5370, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) (same); *Zieger v. Advanced Am., Cash Advance Ctrs., Inc.*, No 13-1614, 2014 WL 7388365, at *7 (D. Del. Dec. 29, 2014) (reciting elements of Rule 23 and striking from class those who failed to opt out of the arbitration clause); *Champ v. Siegel Trading Co.*, No. 89-7148, 1990 WL 19984, at *7 (N.D. Ill. Feb. 27, 1990) (Hart, J.) (denying class certification and explaining that "any class would have to be limited to persons who did not agree to arbitration"); *see also Lim v. Helio, LLC*, No. 11-9183, 2012 WL 12884439, at *3 (C.D. Cal. Apr. 18, 2012) (finding that plaintiff could not satisfy superiority because the court would expect a "multitude of individual motions to compel arbitration as class members are identified, which is likely to substantially delay resolution of this case and consume the Court's resources").

putative class: the Dispute Resolution clause—which [plaintiff] cannot challenge and which is presumed valid—expressly prevents borrowers from participating in class actions.

*Zieger*, 2014 WL 7388365, at *7 (internal citations omitted).[9]

This conflict should be addressed now because failing to do so "would essentially permit courts to ignore arbitration agreements signed by every absent class member, so long as there is one named plaintiff who is not bound by the arbitration agreement" and "[w]hile an absent class member may be 'passive,' they are still parties to a suit, whose claims are actively being litigated by class counsel." *Conde*, 223 F. Supp. 3d at 961 (internal citations omitted). Ignoring arbitration agreements in such a manner would adversely impact not only Defendants' rights, but the rights of the purported class, too. For all of these reasons, Plaintiff's class definition is fatally overbroad and Plaintiff's class allegations should be stricken or, at the very least, redefined to specifically exclude anyone subject to an arbitration agreement.

## B. The Class Definition Should Account For The One-Year Limitations Period

Plaintiff and all other subscribers agreed to a one-year contractual limitations period in the Subscriber Agreement. *See* Subscriber Agreement § 13(f)(1). As Magistrate Judge Kim noted in *Santangelo*, this one-year contractual limitations period was plainly set forth in the

---

[9] *See also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n.5 (11th Cir. 1987) (explaining that individuals bound to arbitrate could not be members of class); *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 640 (D. Or. 2015) (excluding from class those subject to arbitration agreements after considering predominance under Fed. R. Civ. P. 23(b)); *Dudley v. MetroPCS Commc'ns, Inc.*, No. 14-1802, 2014 WL 3908157, at *2 (N.D. Cal. Aug. 8, 2014) (finding that plaintiff had "made no showing that she could proceed on behalf of customers who did not opt out of the arbitration agreement" and was "not entitled" to discovery regarding those customers); *Labou v. Cellco P'ship*, No. 13-0844, 2014 WL 824225-MCE-EFB, at *4 (E.D. Cal. Feb 28, 2014) (denying certification with respect to customers who agreed to arbitration because typicality requirement could not be met); *In re Online Travel Co. Hotel Booking Antitrust Litig.*, 953 F. Supp. 2d 713, 725 (N.D. Tex. 2013) (finding "the instant case . . . calls for claims of absent class members to be stricken prior to class certification" where those putative class members were subject to arbitration agreements); *In re Apple & AT&T Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011) (decertifying class after enforcing agreement); *Pablo v. ServiceMaster Global Holdings Inc.*, No. 08-3894, 2011 WL 3476473, at *2-3 (N.D. Cal. Aug. 9, 2011) (denying class certification where Rule 23 requirements could not be met because "a significant number" of putative class members were subject to arbitration agreements); *In re Currency Conversion Fee Antitrust Litig.*,

Subscriber Agreement (*see* Order of July 29, 2016, *Santangelo v. Comcast* [Dkt. No. 101] at 13-14), and is valid and enforceable. *See Stephan v. Goldinger*, 325 F.3d 874, 877 (7th Cir. 2003) (upholding one-year limitations period and noting that it "is not an unreasonably short time for bringing a suit"); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 706 (7th Cir. 2004) (citing *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1203 (7th Cir. 1992)). Plaintiff's proposed class definition, which purports to extend beyond one year, is therefore overbroad: "the one-year statute of limitations . . . applies, and allegations of conduct . . . occurring outside of the one-year statute of limitations should be stricken." *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) (granting motion to strike).[10]

### C. The Class Definition Should Account For The Court's Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014); *see also Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 745-46 (N.D. Ill. 2016) (Castillo, J.) aff'd 852 F.3d 687 (7th Cir. 2017). Because "jurisdiction under the Illinois long-arm statute is essentially coextensive with federal due process requirements," the operative question is whether the Defendants have sufficient "minimum contacts" with Illinois such that haling them into court in this state is consistent with due process. *Leibovitch*, 188 F. Supp. 3d at 746 n.5. As the Supreme Court has recently made clear, personal jurisdiction, and thus sufficient minimum contacts, must exist as to the defendants for each claim brought by *each* plaintiff in an action. *Bristol-Myers*, 137 S. Ct. at 1781-82. This Court lacks general jurisdiction and specific jurisdiction over

---

230 F.R.D. 303, 312 (S.D.N.Y. 2004) (excluding those subject to arbitration agreements).

[10] *See also Ramirez v. Baxter Credit Union*, No. 16-3765, 2017 WL 1064991, at *8 (N.D. Cal. Mar. 21, 2017) (same); *Sample v. Aldi Inc.*, No. 93-3094, 1994 WL 48780, at *4 (N.D. Ill. Feb. 15, 1994) (Marovich, J.) (holding that "proposed class must be limited to those individuals who could have filed claims within the relevant limitations period[]").

Defendants as it relates to the putative class members whose claims have no connection whatsoever to Illinois.

### 1. This Court Does Not Have General Jurisdiction Over Defendants

General jurisdiction exists over a corporation when its "'affiliations with the State are "so continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Courts have interpreted this standard to mean that "in all but the most 'exceptional' cases[,] general jurisdiction over a corporation is limited to its place of incorporation and/or principal place of business." *Leibovitch*, 188 F. Supp. 3d at 746; *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (a finding of general jurisdiction "is proper only in the limited number of fora in which the defendant can be said to be 'at home,' which "[f]or a corporation . . . include[s] the state of incorporation and the state of the principal place of business"). Here, both Defendants have their principal places of business in Pennsylvania, and Comcast Corporation is incorporated in Pennsylvania. *See* Compl. ¶¶ 9-10; Salcedo Decl. ¶¶ 4, 6. As such, this Court does not have general jurisdiction over them.

### 2. This Court Does Not Have Specific Jurisdiction Over Defendants with Regard to Out-of-State Plaintiffs

A court has specific jurisdiction over a defendant when "the defendant's *suit-related* conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added). This connection "must arise out of contacts that the 'defendant [itself]' creates with the forum State," and it is only those contacts "with the forum State itself," as opposed to "the defendant's contacts with persons who reside there," that are analyzed. *Id.* at 1122 (citation omitted); *see also Adv. Tactical*, 751 F.3d at 801. Therefore, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the

very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (citation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781.

As a result, the connection between a defendant's challenged conduct and the forum is needed for each claim asserted by each plaintiff.[11] The Supreme Court's recent decision in *Bristol-Meyers* is instructive. In that case, a group of 86 California residents and 592 residents from 33 other states filed eight mass action complaints in California state court alleging that a drug had damaged their health in violation of various California state laws. *Id.* at 1778. In addressing the California Supreme Court's ruling that the defendant was subject to personal jurisdiction in California, the United States Supreme Court reiterated that "settled principles regarding specific jurisdiction control[led]," and the relevant question for determining personal jurisdiction is not whether the "defendant has extensive forum contacts[,] . . . which resembles a loose and spurious form of general jurisdiction," but rather whether there is "a connection between the forum and the specific claims at issue." *Id.* at 1781. Finding that no such connection had been shown for the non-resident plaintiffs, the court reversed the California Supreme Court. *Id.* at 1784.

While the Supreme Court was not asked to (and did not) address whether the same reasoning would apply under the Fifth Amendment in federal court, several federal courts had already separately considered the issue and held that it does. *See [Demaria v. Nissan N. Am., Inc., No. 15-3321, 2016 WL 374145, at \*6-8 (Blakey, J.) (N.D. Ill. Feb. 1, 2016)](#)* (finding that

---

[11] *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Seifirth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006); *[Sunny Handicraft (H.K.) Ltd. v. Edwards, No. 16-4025, 2017 WL 1049842, at \*4 (N.D. Ill. Mar. 20, 2017)](#)* (Lee, J.); *see also* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. § 1351 n.30 (3d ed. Apr. 2017 Update) ("[S]pecific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 164 F.

personal jurisdiction over the defendant existed as to the claims of only one plaintiff in a class action because the complaint did not allege "that anything [the defendant] did in Illinois had anything to do with any of the other plaintiffs' claims" and dismissing the claims brought on behalf of a nationwide class "to the extent they are brought on behalf of plaintiffs' whose claims do not arise out of [the defendant's] Illinois activities"); *see also Adkins v. Comcast Corp.*, No. 16-5969, Order Granting Mot. to Dismiss (N.D. Cal. Apr. 25, 2017), ECF No. 64 (dismissing claims of out-of-state plaintiffs in putative class action after finding that court did not have personal jurisdiction over their claims). These requirements are consistent with federal authority concerning class actions, which has repeatedly and consistently maintained that the class action mechanism may "not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b),[12] may not foreclose a defendant's "due process right to raise individual challenges and defenses to claims," *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013),[13] and does not expand a federal court's jurisdiction. *See* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts . . . .").[14]

---

Supp. 3d 1040, 1046-50 (N.D. Ill. 2016) (Kennelly, J.).

[12] *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (holding that a Federal Rule of Civil Procedure is invalid "if it alters 'the rules of decision by which [the] court will adjudicate [those] rights'" (citation omitted)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right' . . . ." (citation omitted)).

[13] *See also Dukes*, 564 U.S. at 367 (2011) (holding that "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' . . . a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims" (citation omitted)); *Carrera*, 727 F.3d at 307 ("[A] class action cannot be certified in a way that eviscerates this right or masks individual issues.").

[14] *See also Port Drum Co. v. Umphrey*, 852 F.2d 148, 149-50 (5th Cir. 1988) ("The rules, then, only implement the exercise of jurisdiction *otherwise* conferred by Congress and do not provide an independent basis for parties without any other jurisdictional grant to get into federal court in the first place. . . . If the rules constituted independent grants of jurisdiction, a party with no other basis of jurisdiction could bootstrap itself into federal court, and survive a jurisdictional motion to dismiss, merely by alleging a desire to enjoy the benefits of one of the rules or to have that rule construed."); *Bendix Aviation Corp. v. Glass*, 195 F.2d 267, 270 (3d Cir. 1952) ("It is unquestionably true that neither the Act

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Partially Strike Plaintiff's Class Allegations.

Dated: July 17, 2017

Respectfully submitted,

/s/ Justin O. Kay
Justin O. Kay (ARDC No. 6286557)
**Drinker Biddle & Reath LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel.: (312) 569-1000
Fax: (312) 569-3000
Justin.Kay@dbr.com

OF COUNSEL:

Seamus C. Duffy
Michael W. McTigue Jr.
Michael P. Daly
Meredith C. Slawe
**Drinker Biddle & Reath LLP**
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Tel.: (215) 988-2700
Fax: (215) 988-2757

*Attorneys for Defendants Comcast Corporation and Comcast Cable Communications, LLC*

---

of 1934 nor its successor, Sec. 2072 of Title 28, authorized the Supreme Court by the Federal Rules of Civil Procedure adopted under those statutes to alter the jurisdiction of the district courts . . . .").

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 17, 2017, I caused a true and correct copy of the foregoing document to be filed on the Court's CM/ECF system, which served notice on all counsel of record:

William M. Sweetnam
SWEETNAM LLC
100 North La Salle Street, Suite 2200
Chicago, Illinois 60602
(312) 757-1888

/s/ *Justin O. Kay*
Justin O. Kay